IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ERIC SCURRY, | **JURY TRIAL DEMANDED** |
| Plaintiff, | |
| vs. | |
| | Civil No.: _1:24-cr-1237_____ |
| MARY DAVIS | |
| 1350 Connecticut Avenue, N.W. | |
| Suite 202 | |
| Washington, DC 20036, | |
| | |
| CHRISTOPHER DAVIS | |
| 1350 Connecticut Avenue, N.W. | |
| Suite 202 | |
| Washington, DC 20036, | |
| | |
| DAVIS & DAVIS | |
| 1350 Connecticut Avenue, N.W. | |
| Suite 202 | |
| Washington, DC 20036, | |
| | |
| Defendants. | |

## COMPLAINT FOR LEGAL MALPRACTICE

Plaintiff Eric Scurry, by and through the undersigned counsel, hereby

respectfully files this Complaint for Legal Malpractice against the above-listed

defendants, alleges and requests as follows:

## NATURE OF THE ACTION

1.   This is an action for professional legal malpractice by the above-listed

   Defendants during their criminal defense of Plaintiff in *United States v.*

*Scurry*, Case No. 10-cr-310-RCL, before the United States District Court for the District of Columbia ("District Court"), both in the initial trial court proceedings, and in a subsequent first motion to vacate the Plaintiff's sentence under Title 18, United States Code, Section 2255, and, again, in *United States v. Scurry*, Case No. 18-3067, before the United States Court of Appeals for the District of Columbia Circuit ("Court of Appeals"), on appeal of the denial of his first Section 2255 motion (altogether, the "Criminal Case").

2.    Defendants, who owed Plaintiff the duties of care and loyalty in the Criminal Case, breached those duties in various manners, proximately causing Plaintiff harm by way of his prolonged unlawful imprisonment.

3.    Among other errors committed in their ineffective assistance to Plaintiff, Defendants repeatedly failed to identify and assert facts of critical significance to Plaintiff's ability to challenge the legality of wiretaps conducted by the Federal Bureau of Investigation ("FBI") that had led to the FBI's discovery of evidence against him and, ultimately, to his decision to plead guilty and to waive appeal rights.

4.    This is an action for compensatory and punitive damages.  In committing malpractice, Defendants Mary Davis and Davis and Davis engaged at times in blatant wrongdoing, with deliberate malice and conscious disregard for Plaintiff's legal and constitutional rights under federal law, as to which Chris Davis is vicariously liable.

**THE PARTIES**

5.    Plaintiff Eric Scurry ("Scurry") is the defendant in the Criminal Case, is the former client of Defendants, and is a citizen of and resident domiciled in the State of Virginia.  Since his release from custody by the U.S. Bureau of Prisons on August 18, 2021, Plaintiff has also had meaningful contact with the State of Maryland. Nonetheless, he has been living in Alexandria, Virginia since 2021.

6.    Defendant Mary E. Davis ("Mary Davis") is an attorney licensed to practice in the District of Columbia, D.C. Bar No. 385583, is a partner in the law firm of Davis and Davis, was the attorney for Plaintiff in the Criminal Case, and is a citizen of and resident domiciled in the District of Columbia.

7.    Christopher M. Davis ("Chris Davis") is an attorney licensed to practice in the District of Columbia, D.C. Bar No. 385582, is a partner in the law firm of Davis and Davis, was the attorney for Plaintiff in the Criminal Case, and is a citizen of and resident domiciled in the District of Columbia.

8.    Davis & Davis, a partnership, is a self-described "husband and wife full service criminal defense law firm," located at 1350 Connecticut Avenue, N.W., Suite 202, Washington, DC 20036, holding itself out as litigating trial, appellate, and post-conviction matters and claiming to serve the best interests of clients, "not anyone else's."

## JURISDICTION AND VENUE

9.      This Honorable Court is vested with subject matter jurisdiction pursuant to the diversity jurisdiction provisions of 28 U.S.C. § 1332 because this is a civil action between citizens of different states and has an amount in controversy exceeding $75,000.

10.     This Honorable Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under, and raises substantial questions, of federal law. The application of federal law as to the parties' liabilities, duties, and legal rights, including but not limited to the legal consequences of the Government's violation of federal wiretap law, is necessary to resolve Plaintiff's claim of malpractice.

11.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because the events, transactions, and omissions giving rise to this civil action occurred in this District of the District of Columbia, and the Defendants reside within the geographic bounds of this District of the District of Columbia.

## FACTS

12.     In 2009, the Federal Bureau of Investigation ("FBI") began investigating suspected narcotics distribution at an apartment complex in southeast Washington, D.C. In early 2010, the FBI obtained judicial orders in federal court for a series of wiretaps on various individuals' phones, including on Plaintiff's phone.

13.  One of the wiretaps was on Terrance Hudson's telephone, with which FBI agents intercepted calls to and from Plaintiff that the FBI considered to be evidence of criminal activity under federal law, as was their specific intention stated in the wiretap application.

14.  After the Hudson wiretap, the Government then used the evidence thus derived and wiretapped Robert Savoy's phone, then James Brown's phone, and finally Jerome Johnson's phone.

15.  The Hudson and Johnson wiretap orders did not include the name of the high-level U.S. Justice Department official who approved the application, thus violating federal wiretap law in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, and providing the grounds later for pretrial defense motions under federal law to suppress the wiretap evidence. Such defense motions were submitted by Hudson and Johnson and, though denied by the District Court, were ultimately decided in their favor by the Court of Appeals.

16.  In late 2010, the Government arrested and charged Plaintiff, Hudson, Savoy, and Johnson in the Criminal Case. Brown was arrested and charged in 2011. Among other things, the government alleged that all five men conspired, from November 2006 through November 2010, to distribute and possess with intent to distribute five kilograms or more of cocaine and 280 grams or more of crack cocaine.

17.  On December 21, 2010, Plaintiff entered a not guilty plea to all the charges of conspiracy, narcotics distribution, and money laundering charged by indictment against him.

18.  On July 20, 2011, after the District Court had ordered the appointment of counsel, Chris Davis filed a notice of appearance to represent Plaintiff as court-appointed counsel in the Criminal Case. Chris Davis, and his law partnership of Davis & Davis, including Mary Davis, thus assumed professional duties of care and loyalty towards Plaintiff.

19.  Throughout virtually the whole time that Plaintiff was pending trial in the Criminal Case, his contact with counsel was with Chris Davis.

20.  Each of the defendants in the Criminal Case moved to suppress evidence from their own wiretaps, and several including Plaintiff moved to join their co-defendants' motions to suppress. In Plaintiff's instance, he filed through Chris Davis a motion joining in Hudson's, Johnson's, and Brown's motions to suppress. Plaintiff, therefore, sought to suppress evidence from the co-defendant's wiretaps that had lacked the name of the high-level Justice Department official who approved the application, as required.  The District Court granted Plaintiff's procedural joinder motion, but on substance denied his and his co-defendants' suppression motions.

21.  In addition to drafting and filing mostly boilerplate pretrial procedural motions, Chris Davis expended little to no time and effort in fulfilling the following duties as Plaintiff's counsel: (a) reviewing with Plaintiff the

evidence produced by the Government; (b) discussing with Plaintiff plans or theories to defend the case at trial; (c) conducting investigation into either Government or defense witnesses, including witness interviews; or (d) keeping Plaintiff informed about the case.

22. Otherwise, Chris Davis's work on the case primarily consisted in advising Plaintiff repeatedly that he should accept the Government's plea offers.

23. Plaintiff, on the other hand, believed that he had viable defenses to the charges. Among other things, the Government did not have the evidence, including from the Government's wiretap targeting his own phone, to prove the charge that he was a member of a narcotics conspiracy. Other aspects of the criminal case against him were built on the basis of informant evidence, the reliability of which was untested.

24. Plaintiff maintained before the District Court his innocence of all charges until his counsel from Davis & Davis, in their negligence and disloyal performance of their duties towards him, succeeded in causing him upon their advice to enter an unknowing and involuntary plea of guilty.

25. Chris Davis was generally overwhelmed by other work commitments at the time. As the trial date came up, Chris Davis became unavailable because of another matter.

26. The District Court had stated that Plaintiff's trial took precedence over the other matter, but Chris Davis nonetheless suddenly and carelessly handed Plaintiff's representation off to his wife and law partner Mary Davis. Mary

Davis began appearing in court for Plaintiff instead, at a pretrial conference the Friday before trial.

27. On September 10, 2012, on a day Plaintiff thought he was going to court to prepare for trial, Mary Davis came to see him in the courthouse lock-up.

28. However, like Chris Davis before, Mary Davis did not talk with Plaintiff about exercising his constitutional trial rights and mounting a defense at trial.

29.  Instead, that day Mary Davis pressured Plaintiff into signing a plea agreement that she did not give him a full opportunity to review.

30. Language in the plea agreement that Mary Davis brought to him failed to preserve his right to appeal the denial of his co-defendants' motion to suppress the wiretap evidence, which he had joined.

31. Neither Mary Davis then, nor Chris Davis beforehand, discussed with Plaintiff the possibility of waiving his right to appeal with the exception of preserving all of his objections to the wiretap evidence for appeal.

32. Because of Mary Davis's pressure on him to sign, Plaintiff did not read the plea agreement language's actual waiver language giving up appeal rights as to the co-defendants' suppression motions.

33. Mary Davis and Christopher Davis never discussed with Plaintiff the fact that there had been interceptions of his calls on Terrence Hudson's wiretap.

34. The interceptions of Plaintiff's calls on Terrence Hudson's wiretap established his legal standing to argue in the District Court and in the Court

of Appeals the illegality of that wiretap and the other co-defendants' wiretaps, and to have evidence from those wiretaps and any evidence arising thereafter as a result suppressed and excluded from the Government's case at trial under federal law.

35. Suppression of the wiretap evidence and the "fruit of the poisonous tree" would have had a decisive impact for Plaintiff in defending the Government's case.

36. This crucial evidence of Plaintiff's wiretapped calls with Hudson was easily findable in the discovery that the Government had provided to Davis & Davis. In addition, Plaintiff had indicated to Mary Davis that he had appeared on the wiretapped line. Nonetheless, Mary Davis did not review the co-defendants' wiretaps.

37. There was no defense strategy behind Plaintiff agreeing to the scope of the appellate waiver as it was written, *i.e.*, giving up Plaintiff's right to appeal the denial of his co-defendants' suppression motions.

38. To the contrary, the giving up of this right was the proximate result of Davis & Davis's inexcusable negligence in failing to review discovery and of their disloyal desire to persuade Plaintiff to plead guilty as soon as possible without minimally testing the Government's most important offer of proof.

39. Defendants Mary Davis, Chris Davis, and Davis & Davis thus rendered ineffective assistance in negotiating and counseling Mr. Scurry's guilty plea,

with its appeal waiver that resulted ultimately in the Court of Appeals denying him relief based on his co-defendants' suppressed wiretap evidence.

40. On the same day as he signed the plea agreement, September 10, 2012, Plaintiff pled guilty to two criminal counts. The first count of conviction was for conspiracy to distribute and possess with the intent to distribute 280 grams or more of cocaine base.  The second count of conviction was for conspiracy to launder monetary instruments.

41. It was Plaintiff's understanding that the 280-gram amount of crack that he admitted to conspiring to distribute as part of his plea was the amount for which the entire conspiracy was responsible.

42. Plaintiff further believed, at the time of entering the plea, that the 280-gram amount was determined from the wiretaps of his co-defendants' cell phones.

43. Mary Davis did little to no preparation of Plaintiff for the hearing where he entered his guilty plea.

44. During the hearing where Plaintiff entered his guilty plea, no one mentioned the scope of Plaintiff's appeal waiver in the plea agreement, and what it did and did not include. Mary Davis did not make such a mention despite the District Court's request that she explain the material terms of the plea agreement. Mary Davis did not make such a mention in contrast to other defense counsel who went before her and provided explanations of the contrasting details of their clients' appeal waivers during the same hearing.

45.    Instead, Mary Davis avoided mentioning this issue in which her performance had already fallen below the minimal standards of professional competence in representing Plaintiff.

46.    The District Court accepted Plaintiff's guilty plea with this critical information about the scope of Plaintiff's appeal waiver withheld by Mary Davis from it and from Plaintiff.

47.    Because of both of his counsel's ineffective assistance, Plaintiff unknowingly and involuntarily acted to forego his constitutional trial rights, and this Court entered Plaintiff's plea of guilty and a judgment of conviction on the date of December 3, 2012.

48.    The length of sentence imposed on Mr. Scurry was twelve years of imprisonment, followed by five years of supervised release.

49.    After Plaintiff's sentencing in the Criminal Case, he filed a direct appeal of his judgment, which was consolidated with that of his co-defendants in the Court of Appeals (USCA DC Cir. Case No. 12-3104).

50.    Mary Davis initially represented Plaintiff on appeal, though he soon asked the Court of Appeals for her to be removed as counsel because she had a conflict of interest. Plaintiff alleged that she coerced Plaintiff into pleading guilty, and she was married to Chris Davis, against whom Plaintiff also planned to file an ineffective assistance of counsel claim. The Court of Appeals appointed new counsel to take Mary Davis's place as Plaintiff's appellate counsel.

51.  On August 2, 2016, the Court of Appeals affirmed the order denying
     Plaintiff's motion to suppress the wiretap on his own phone. Yet, the Court of
     Appeals reversed the orders denying the motions to suppress the wiretaps on
     his co-defendants' on account of the lack of proper signature authority for
     them under federal law. The Court of Appeals remanded the case for further
     proceedings.

52.  Once the case was remanded from the Court of Appeals, after its ruling that
     Hudson's and Johnson's wiretaps were illegal, but Plaintiff's was not, the
     Government moved the District Court to dismiss Hudson's, Johnson's and
     Savoy's cases but not Plaintiff's. Accordingly, the Bureau of Prisons released
     Hudson, Johnson, and Savoy, but not Plaintiff.

53.  Plaintiff then filed a *pro se* motion to dismiss his indictment on the ground
     that it was based on suppressed evidence.

54.  Next, Mary Davis contacted Plaintiff and said that the District Court was
     appointing her to represent him again and help him with his request for post-
     conviction relief because she was familiar with the case.

55.  In violation of her ethical duties, Mary Davis failed to engage Plaintiff in any
     discussion about the ineffective assistance of counsel claim he had raised
     against her at the beginning of his direct appeal, or any other discussion of
     her having a conflict of interest in representing him.

56.  In violation of her ethical duties, Mary Davis did not discuss the advantages
     or disadvantages of her representing Plaintiff.

57. Mary Davis misled Plaintiff by stating that she should be able to get him out of prison with a motion under Section 2255 because his plea was induced by illegal evidence.

58. In obtaining Plaintiff's acquiescence to her re-appointment, Mary Davis did not mention that Plaintiff had not preserved in his plea agreement an argument for suppression based on his co-defendants' illegal wiretaps.

59. Accordingly, Plaintiff was unaware of the issue of Mary Davis's ineffective assistance of counsel in advising him to take the plea agreement with appeal waiver language only preserving his appeal of his own motion as to his own wiretap.

60. Plaintiff was similarly unaware that his counsel at Davis & Davis had failed to put in the record the specific evidence that existed in the Government's discovery showing that he had been intercepted on Hudson's wiretap.

61. Nor was Plaintiff aware that he therefore indeed had standing to pursue the appeal issues that had succeeded in getting his co-defendants' cases dismissed and in freeing them from imprisonment.

62. Plaintiff went along with Mary Davis's suggested re-appointment to represent him. On December 19, 2017, Plaintiff filed a *pro se* motion for appointment of Mary Davis as his counsel, which the District Court granted.

63. Mary Davis and Davis & Davis thus renewed their duties of care and loyalty to Plaintiff.

64.   Mary Davis and Davis & Davis resumed representation of Plaintiff in the Criminal Case despite knowledge of their conflict of interest.

65.   Mary Davis and Davis & Davis used their resumed representation of Plaintiff to benefit themselves and harm Plaintiff by covering up their errors as his counsel in his post-conviction litigation under Section 2255.

66.   In his initial post-conviction motions, Plaintiff made no claim of ineffective assistance of counsel by Davis & Davis in persuading him to accept the plea offer's terms, nor any claim that his plea colloquy was tainted.

67.   In response to this first motion under Section 2255, the Government incorrectly argued that Plaintiff's "codefendants successfully appealed their convictions due to issues unrelated to this defendant."

68.   In reply, Mary Davis and Davis & Davis did <u>not</u> show that, in fact, the evidence against Plaintiff included wiretapped recordings of Hudson's phone where Plaintiff's call was incoming, as was the case.

69.   In 2018, the District Court denied Plaintiff's motion for post-conviction relief, relying principally on its finding that Plaintiff would not have had standing to challenge the wiretaps of his co-defendants' phones because he "was not the target of the wiretaps that the [Court of Appeals] found invalid and he has not established in his pleadings that he was a party to the wiretap intercept."

70. Furthermore, the District Court ruled, the "[Court of Appeals]'s opinion—
which expressly upheld this Court's decision not to suppress the Scurry
wiretaps—has no effect on the evidence against Scurry."

71. What the District Court did not know at the time of this ruling was that
Plaintiff did, in fact, stand to benefit from the Court of Appeals' ruling on his
co-defendants' suppression motions, because of the evidence disclosed in
discovery of Plaintiff's presence on the Hudson wiretap.

72. Plaintiff's counsel could have and should have presented those facts about the
wiretap, and obtained suppression of evidence collected from that wiretap
and all "fruit of the poisonous tree" thereof.

73. Suppression of the wiretap evidence would have eliminated a large portion of
the Government's case at trial, making it difficult or impossible to carry its
burden of proof of evidence beyond a reasonable doubt.

74. Mary Davis then filed Plaintiff's appeal of this Court's decision denying the
Section 2255 motion she had filed, pressing the arguments that Plaintiff's
plea was "induced" by illegally obtained proof.

75. Mary Davis did not admit and argue to the Court of Appeals that she and
Chris Davis had failed to provide Plaintiff with effective assistance of
counsel, including by failing to establish his standing to pursue suppression
of his co-defendants' wiretaps, as was the case.

76.    Once again, Mary Davis failed to meet standards of reasonable care by minimally investigating Plaintiff's factual grounds for relief on appeal, the failure to do so deprived Plaintiff of a critical argument for suppression.

77.    Mary Davis did not do so because that would require holding herself and her husband/partner accountable for malpractice against Plaintiff at multiple stages in the District Court.

78.    On appeal of the denial of the Section 2255 motion, the Government once again incorrectly denied that the case it had brought against Plaintiff had been built -- even in part -- on suppressed wiretap evidence, this time arguing that he "lacked standing to challenge wiretaps on others' phones **when he was not a party to the intercepted conversations**."

79.    There was again no rejoinder to this by Plaintiff's conflicted counsel, Mary Davis, to argue that Plaintiff had, in fact, been recorded on Hudson's illegal wiretap various times, and that the Government's own discovery plainly showed this.

80.    The substantive arguments that Mary Davis did make on Plaintiff's behalf failed -- and failed predictably -- under well-established law. The Court of Appeals held that "by pleading guilty, Scurry specifically waived any challenge to the government's evidence other than his expressly reserved challenge to the district court's denial of his own motion to suppress evidence from the wiretap on his telephone."

81.    The Court of Appeals also observed that Plaintiff, to prevail on a ground for vacating his sentence by challenging his co-defendants' wiretaps, would need to prove his standing to do so under Title III of the Omnibus Crime Control and Safe Streets Act of 1968.  The Court of Appeals flagged that Plaintiff's presence on his co-defendants' wiretaps, with which former counsel was not familiar, would be "a fact of potentially critical significance to his ability to challenge those wiretaps."

82.    The Court of Appeals recognized other potential grounds for post-conviction relief not raised -- specifically Mary Davis's conflicted interest against raising her own ineffective assistance of counsel.

83.    On April 5, 2021, the Court of Appeals ordered Mary Davis disqualified, remanded the case to the District Court, and ordered the appointment of conflict-free counsel to represent Plaintiff.

84.    The Sixth Amendment to the United States Constitution guarantees that the accused in a criminal case shall receive the effective assistance of counsel. Defendants Mary Davis's, Chris Davis's, and Davis & Davis's performance as Plaintiff's counsel fell below an objective standard of reasonableness based on the facts set forth above.

85.    There is a reasonable probability that, but for counsel's breach of the duties of care and loyalty, and other unprofessional conduct, the result of the Criminal Case would have been more favorable to Plaintiff.  Plaintiff suffered deprivation of his constitutional right to a fair trial where he was innocent

until proven guilty by the Government with proof beyond a reasonable doubt. Plaintiff would have likely prevailed at trial under that standard.

86. At a minimum, Plaintiff spent years of prolonged unlawful incarceration that his released co-defendants did not spend, because of Defendants' malpractice.

87. Because of his prolonged unlawful incarceration, Plaintiff suffered years of emotional pain and suffering, several tens of thousands of dollars in lost employment income (which he presently earns as a truck driver), and other damages.

88. In an unauthorized pleading following her disqualification, Mary Davis argued back against the finding that she had an unwaived conflict of interest, and against the substantive legal reasoning of the Court of Appeals used in rejecting Plaintiff's appeal.

89. Along the way of justifying the arguments she had chosen to make and not to make for Plaintiff, Mary Davis asserted -- just like the Government did -- that Plaintiff had not appeared on co-defendants' wiretaps: "Scurry's conversations were not on the other wires. (If they had been, there would have been no need for the § 2255 –his conviction would have been set aside along with the co-defendants' convictions.)"

90. Mary Davis took this incorrect factual position despite admitting that she had not reviewed the co-defendants' wiretaps.

91.    Mary Davis thus recklessly and maliciously sought to undermine Plaintiff's chances of post-conviction relief in order to benefit herself, Chris Davis, and Davis & Davis.

92.    Mary Davis thus violated her ethical duty of loyalty to not act adversely to her client's interests in an unjustifiable manner, which survived the end of her representation of Plaintiff.

93.    Throughout 2021 and 2022, Mary Davis continued to make recklessly and intentionally false arguments against Plaintiff's interests in post-conviction litigation as he stood to pursue Section 2255 relief with conflict-free counsel -- all in order to justify her previous actions and omissions as Plaintiff's counsel.

94.    On April 28, 2021, the U.S. Bureau of Prisons released Plaintiff from a community corrections facility to home confinement in Maryland based on considerations of inmate population management during the COVID-19 epidemic.

95.    On August 18, 2021, after more than ten years from the time of his arrest in the Criminal Case, Plaintiff was officially released from Bureau of Prisons custody, which constituted a legal disability from pursuing the instant lawsuit, and he commenced a 5-year period of supervised release.

96.    After appointment of conflict-free counsel to represent Plaintiff, Defendants Mary Davis, Chris Davis, and Davis & Davis refused to cooperate with Plaintiff's investigation of the factual grounds for the Section 2255 motion by

denying Plaintiff's request for interviews. In this manner, they intentionally concealed the discovery of grounds for finding their own ineffective assistance and legal malpractice in representing Plaintiff.

97. This concealment was effective for several months, until at least January 2022, until Plaintiff discovered the FBI evidence showing him on Hudson's wiretap, constituting a critical factual element of Defendants' ineffective assistance of counsel and legal malpractice.

98. In February 2022, through conflict-free counsel, Plaintiff filed a further motion to vacate his sentence under Section 2255 based on Defendants' ineffective assistance of counsel.  The District Court ordered a response from the Government to Plaintiff's latest motion under 2255, but the motion is still pending before the District Court after full briefing by the parties.

99. In April 2023, Mary Davis was forced to admit the facts of her wrongdoing, unwaived conflict of interest, and substandard performance as Plaintiff's counsel in an adversarial proceeding brought by the D.C. Court of Appeals Office of Disciplinary Counsel.

100. The erroneous legal advice provided by Defendants was the proximate cause of plaintiff's loss of tens of thousands of dollars in employment income every year for several years, and of enormous emotional pain and suffering, during his prolonged unlawful incarceration, amounting to damages in excess of $75,000.

## **COUNT I**

101.   Plaintiff adopts and incorporates by this reference the allegations of paragraphs 1-57, as if fully set forth herein.

102.   From 2011 to 2013, Defendants each formed and maintained an attorney-client relationship with Plaintiff, and accordingly, each owed Plaintiff duties of care and loyalty.

103.   The failures during this period by Defendants to review the Government's discovery, to investigate Plaintiff's case, to explore viable legal defenses, to provide information and advice about the Government's proposed plea agreement and its appeal waiver, to disclose material information to the Court in his plea colloquy, and other acts and omissions stated above, breached their respective duties of care and loyalty, constituting legal malpractice.

104.   As a proximate consequence of the foregoing negligence and disloyalty, Plaintiff has been damaged in an amount to be proved at trial, but in any event not less than $75,000, exclusive of interest and costs.

105.   Defendants, and each of them, are liable to Plaintiff for all damages so proven.

## **COUNT II**

106.   Plaintiffs adopt and incorporate by this reference the allegations of paragraphs 1-57, as if fully set forth herein.

107. From 2017 to 2021, Defendants Mary Davis and Davis & Davis each formed an attorney-client relationship with plaintiff, and accordingly, each owed plaintiffs duties of care and loyalty.

108. The conflicted, erroneous legal advice and representation during this period provided to Plaintiff by Defendants, in concealing grounds for suppression of evidence and dismissal of his case, and other acts and omissions stated above, breached the duties of care and loyalty owed by an attorney to a client, and therefore, constitute legal malpractice.

109. As a proximate consequence of Defendants' negligence and disloyalty, Plaintiff has been damaged in an amount to be proved at trial, but in any event not less than $75,000 exclusive of interest and costs.

110. Defendants, and each of them, are liable to Plaintiff for all damages so proven.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter judgment in favor of Plaintiff on Count I;

2. Enter judgment in favor of Plaintiff on Count II;

3. Award Plaintiff compensatory damages in amount to be proved at trial, but at a minimum $75,000.

4. Award Plaintiff punitive damages in the amount of $2,500,000;

5. Award Plaintiff his reasonable taxable costs and expenses; and

6.  Award Plaintiffs such other and further relief as this Court

deems just and equitable.


## **JURY DEMAND**

Plaintiffs hereby demand trial by jury of all issues so triable.


Dated this 26th day of April, 2024.

Respectfully submitted,

/s/ Bruce H. Searby

Bruce H. Searby, DC Bar No. 1012382
SEARBY PLLC
2000 P Street, NW, Suite 705
Washington, D.C. 20036
Tel: (202) 750-6106
Fax:  202-849-2122
bsearby@searby.law

COUNSEL FOR PLAINTIFF
ERIC SCURRY